IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LISA McKINLEY TULLIS, #280307,    )
                                  )
          Plaintiff,              )
                                  )
v.                                )      CIVIL ACTION NO. 2:15-CV-91-WKW
                                  )                   (WO)
                                  )
CLIFF WALKER, et al.,             )
                                  )
          Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint

filed by Lisa McKinely Tullis ("Tullis"), a state inmate currently incarcerated on a

conviction for attempted murder.  The defendants are Cliff Walker, Robert Longshore

and William Wynne, Jr., members of the Alabama Board of Pardons and Paroles ("the

Board) at the time relevant to this case.  In her amended complaint, Tullis contends that

the defendants have violated her rights to due process and equal protection by scheduling

her initial parole consideration date in accordance with the 85%-15 Year Rule set forth in

the Rules and Regulations of the Board, Art. I, § 7.[1]  *Doc. No. 21* at 3-5.  In support of

this claim, Tullis asserts that use of the 85%-15 Year Rule deprives her of due process

---

[1]The pertinent part of this rule directs that "[w]hen an inmate is convicted of one or more of the Class A felonies, Rape I, Robbery I with serious physical injury, Kidnapping I, Murder, Burglary I with serious physical injury, Attempted Murder, Sodomy I, Arson I with serious physical injury, or Sexual Torture (who are eligible for parole), the initial parole consideration date shall be set in conjunction with the inmate's completion of 85 (eighty-five) per cent of his or her total sentence or 15 (fifteen) years whichever is less, unless the designee finds mitigating circumstances." *Doc. No. 43-4* at 7.

because the evidence presented at trial — the testimony of the physician who examined the victim on the date of the offense — establishes that the victim did not suffer a serious physical injury as a result of the attack by Tullis.  Tullis also alleges that the defendants utilized false information in scheduling her parole consideration date.  Tullis seeks issuance of a declaratory judgment and injunctive relief in the form of reconsideration of her parole consideration date without use of the 85%-15 Year Rule.

The defendants filed a special report and supporting evidentiary materials addressing Tullis' claims for relief.  In their report, the defendants maintain that the parole consideration date scheduled for Tullis is appropriate as her conviction for attempted murder, in and of itself, qualifies her for scheduling of her initial parole consideration date under the 85%-15 year Rule.  The defendants likewise deny any reliance on false/erroneous information in the scheduling of Tullis' initial parole consideration date and further assert they did not violate Tullis' due process or equal protection rights because the determination of that date was based solely on her conviction for attempted murder, a qualifying offense under the 85%-15 Year Rule.

After receipt of the defendants' special report, the court issued an order directing Tullis to file a response to the report and advising her that the response should include affidavits or statements made under penalty of perjury and other relevant evidentiary materials.  *Doc. No. 44* at 2.  The order specifically cautioned the parties that unless "**sufficient legal cause**" is shown within fifteen (15) days of entry of this order "**why such action should not be undertaken**, . . . the court may at any time [after expiration of

the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Doc. No. 44* at 2-3.  Tullis filed a response and supporting documents on August 19, 2017.  *Doc. No. 50* and *Doc. No. 50-1*.  In this response, Tullis continues to argue that use of the 85%-15 Year Rule in determining her parole consideration date is improper because her victim did not suffer a serious physical injury and she also presents additional facts in support her equal protection claim.

The court now deems it appropriate to treat the defendants' report as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the amended complaint and the plaintiff's response to the report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-32417cv194.  A fact is material if it is relevant or necessary to the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes of fact not material to the outcome of a case do not preclude entry of summary judgment in favor of the moving party.  *Id*. at 247-248 (The summary judgment "standard provides that the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact. . . .  Only disputes over facts that might affect the outcome of

---

[2]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

The defendants have met their evidentiary burden.  The burden therefore shifts to Tullis to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).  In civil actions filed by inmates, federal courts "must distinguish between

evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [parole] authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow [her] to prevail on the merits, [s]he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims of constitutional violations.  *Anderson*, 477 U.S. at 249; Rule 56(e), *Federal Rules of Civil Procedure*.   "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.   "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).   Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary

judgment appropriate where inmate produces nothing beyond her "own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").   Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.   *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding summary judgment appropriate where no genuine dispute of material fact exists).   At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if [the evidence] in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine

dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record and, as it must at this stage of the proceedings, made "all reasonable inferences in favor of [Tullis]." *Chapman*, 229 F.3d at 1023. After such review, the court finds that Tullis has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary judgment in favor of the defendants.

## III. DISCUSSION

### A. Relevant Facts

Tullis is currently in the custody of the Alabama Department of Corrections confined on a twenty-seven year sentence imposed upon her by the Circuit Court of Houston County, Alabama for attempted murder. At the time Tullis filed this case, her initial parole consideration date had been scheduled for May of 2023 in accordance with the 85%-15 Year Rule adopted by the Alabama Board of Pardons and Paroles. The

pertinent portion of this rule states that the initial parole consideration date of an inmate convicted of attempted murder "shall be set in conjunction with the inmate's completion of 85% (eighty-five) per cent of his or her total sentence or 15 (fifteen) years whichever is less[.]" *Doc. No. 43-4* at 7.  By its very terms, this rule does not require that the victim of an attempted murder suffer a serious physical injury for the offender to qualify for scheduling of his/her parole consideration date under the 85%-15 Year Rule.

## B.  Due Process

To the extent Tullis seeks relief for an alleged lack of due process with respect to the scheduling of her initial parole consideration date, she is entitled to no relief.

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole. . . .  When the statute is framed in discretionary terms there is not a liberty interest created. . . .  Alabama parole statutes do not create a liberty interest [in parole]."  *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). From its inception Alabama statute governing release on parole has been framed in discretionary terms.[4]   The law is well settled that "the mere possibility of parole

---

[4]Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  This statute, in relevant part, reads as follows:

(a) No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but ***only if the Board of Pardons and Paroles is of the opinion that the prisoner meets criteria and guidelines established by the board to determine a prisoner's fitness for parole.***  The guidelines shall serve as an aid in the parole decision process and shall promote the use of prison space for the most

provides simply 'a hope that is not protected by due process. . . .' . . . [T]he Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

Tullis simply does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution. *Heard v. Georgia State Board of Pardons and Paroles*, 222 F. App'x. 838, 840 (11th Cir. 2007); *Monroe*, 932 F.2d at 1441; *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489. Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in [the parole process] are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942 (alleged errors in the scheduling of parole consideration dates nor miscalculations of presumptive

---

violent and greatest risk offenders. The guidelines shall be structured, actuarially based, . . . and include, but not be limited to the following:

    (1) The prisoner's risk to reoffend . . .;
    (2) Progress by the prisoner and the Department of Corrections to plan for reentry;
    (3) Input from the victim or victims, the family of the victim or victims, prosecutors, and law enforcement entities;
    (4) Participation in risk-reduction programs while incarcerated;
    (5) Institutional behavior of the prisoner while incarcerated; and
    (6) Severity of the underlying offense for which the prisoner was sentenced to incarceration.

(b) If the board shall so determine, such prisoner shall be allowed to go upon parole . . . upon such terms and conditions as the board shall prescribe. . . .

(c) . . . [T]he decision concerning parole release shall be at ***the complete discretion of the board***.

*Ala. Code* § 15-22-26 (emphasis added). The statute is clear that the decision to grant parole is within the sole discretion of members of the parole board and that parole is permitted only when board members, in their opinion, deem an inmate suitable for release on parole.

parole release dates constitute a violation of due process). Thus, the due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process. *Slocum*, 678 F.2d at 942

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. The defendants maintain that they acted in accordance with the Constitution, federal law, state law and applicable administrative regulations when determining Tullis' initial parole consideration date. They also advise that the decision to set this date was based solely on the fact that Tullis' conviction for attempted murder, despite the lack of a serious injury to the victim, subjected Tullis to application of the 85%-15 year Rule.

Under the circumstances of this case, the decision of the Parole Board to schedule Tullis' initial parole consideration date for May of 2023 demonstrates a reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that inmates convicted of serious offenses serve an appropriate amount of time before being considered for parole. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Tullis has therefore failed to present any evidence indicating arbitrary or capricious action on the part of the Alabama Board of Pardons and Paroles, the voting-member defendants or its employees. Consequently, summary judgment is

due to be granted in favor of the defendants with respect to those claims implicating due process protection.

### C.  Equal Protection

In the amended complaint, Tullis alleges that the scheduling of her initial parole consideration date deprived her of equal protection.  The defendants deny they undertook any action relative to Tullis based on her race or other constitutionally protected interest. *Doc. No. 43-1 (Aff. of Cliff Walker)* at 2; *Doc. No. 43-2 (Aff. of Robert Longshore)* at 2; Doc. No. 43-3 *(Aff. of William Wynne, Jr.)* at 2.

The law is clear that merely labeling an action violative of equal protection fails to state a claim on which relief may be granted.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not bepressed. . . .  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'"  *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D.Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").

In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) [s]he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in

invidious discrimination against [her] based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required. *See Fuller v. Georgia Bd. of Pardons and Paroles,* 851 F.2d 1307, 1310 (11th Cir. 1988). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Tullis bears the burden of producing evidence which

would be admissible at trial sufficient to show that the actions of parole officials in scheduling her initial parole consideration date resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [her] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).  Instead, the law requires that Tullis present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Anderson*, 477 U.S. at 249.

Tullis alleges in her unsworn response that many victims of "men and women in prison . . . have suffered from serious physical injuries and some even worse but [these inmates] did **not** serve under the 85 % or the 15 years whichever is less rule." *Doc. No. 50* at 5 (emphasis in original).  Tullis further alleges that inmate "LaCharlote Fountain . . . was given a nine year sentence for robbery I . . . [and] given an promise of 8 wk program and return home for parole." *Id*.  The court finds that these allegations do not demonstrate Tullis was similarly situated with the referenced inmates.  First, Tullis presents no evidence that the numerous inmates who allegedly caused serious physical injuries to their victims were convicted of offenses encompassed within the 85%-15 Year Rule.  Moreover, although Tullis asserts that inmate Fountain was convicted of first degree robbery, she does not allege or present any evidence that the robbery entailed a

serious physical injury such that the 85%-15 Year Rule applied to inmate Fountain. Thus, Tullis' "equal protection claim necessarily fails first because [s]he has not [asserted] that [s]he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F.Supp. at 1563 (emphasis in original) ("[T]here is ***no*** evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff. . . .   The plaintiff has offered the Court nothing on which to base [her] equal protection claim.   Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit.").

In addition, this claim provides no basis for relief

> because [Tullis] has not alleged . . . that [s]he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest. [Tullis] has not even claimed that [s]he was treated differently from others because of race, religion, or national origin.  *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration . . . of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment.   There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises:  it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results."   (internal quotation marks omitted)); *see also Cruz v. Skelton*, 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).  Even had Tullis made such an allegation, the defendants maintain and the undisputed evidentiary materials establish that calculation of Tullis' initial parole consideration date was based solely on her conviction for attempted murder.

In light of the foregoing, the court finds the record is devoid of evidence that the defendants or any other parole official acted due to purposeful discrimination.  Under applicable federal law, the allegations made by Tullis are insufficient to show an equal protection violation and summary judgement is due to be granted in favor of the defendants on this claim.

### D.  False Information

Tullis makes a conclusory allegation that the defendants relied on false information contained in a police report and her pre-sentence report to schedule her initial parole consideration date.  In response to this allegation, each of the defendants filed an affidavit denying any reliance on false information in setting Tullis' initial parole consideration date.  *Doc. No. 43-1 (Aff. of Cliff Walker)* at 2; *Doc. No. 43-2 (Aff. of Robert Longshore)* at 2; Doc. No. 43-3 *(Aff. of William Wynne, Jr.)* at 2.  Thus, the defendants do not admit that the information utilized in determining the initial parole consideration date for Tullis was false and categorically deny any knowing reliance on false information.  Additionally, the evidentiary materials filed by the defendants establish that the scheduling of Tullis' initial parole consideration date occurred because

her conviction for attempted murder, regardless of the victim's injuries, rendered Tullis eligible for application of the 85%-15 year Rule.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution. The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information claim.

There is no admission by the defendants that the information utilized to schedule Tullis' initial parole consideration date is false, incorrect or erroneous.  Tullis has failed to submit any evidence that the defendants or any other parole official knowingly used false information in determining her initial parole consideration date.  Additionally, Tullis' conclusory allegation regarding the use of false information does nothing more than raise the possibility that information in her records may be false and this mere possibility fails to provide a basis for relief.  *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that the defendants did not rely on ***admittedly*** false information in the determination of an initial parole consideration date for Tullis.  Consequently, Tullis is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendants is appropriate.

### E.  Constitutionality of Conviction and Sentence

In the instant complaint, Tullis presents claims challenging the sufficiency of the evidence to convict her for attempted murder and the constitutionality of the sentence imposed for this offense.  However, under well-settled law, these claims provide no basis for relief in this 42 U.S.C. § 1983 action.  *Edwards v. Balisok,* 520 U.S. 641, 646 (1997)*; Heck v. Humphrey,* 512 U.S. 477 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

In *Heck*, the Supreme Court held that claims challenging the legality of a prisoner's confinement are not cognizable in a 42 U.S.C. § 1983 action "unless and until

the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims must therefore be dismissed. *Heck*, 512 U.S. at 489. The relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence." *Heck*, 512 U. S. at 487; *Balisok*, 520 U.S. at 648 (inmate's claims for declaratory relief, injunctive relief or monetary damages which "necessarily imply the invalidity of the punishment imposed, [are] not cognizable under § 1983."). Therefore, the rule of *Heck* is not limited to a request for damages but is equally applicable to an inmate's request for declaratory judgment or injunctive relief. *Balisok*, *supra*. "It is irrelevant that [the plaintiff] disclaims any intention of challenging [her] conviction; if [s]he makes allegations that are inconsistent with the conviction [or sentence] having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), citing *Balisok*, 520 U.S. at 646-648.

The law is well settled that "habeas corpus is the exclusive remedy for a . . . prisoner who challenges the fact or duration of [her] incarceration." *Heck*, 512 U.S. at 481 (citing *Preiser*, 411 U.S. at 488-490); *Okoro*, 324 F.3d at 490 (*Heck* directs that a state inmate "making a collateral attack on [the basis for her incarceration] . . . may not do that in a civil suit, other than a suit under the habeas corpus statute."). An inmate "cannot seek to accomplish by a section 1983 declaratory judgment what [s]he must accomplish solely through a writ of habeas corpus." *Jones v. Watkins*, 945 F.Supp. 1143, 1151 (N.D. Ill. 1996); *Miller v. Indiana Dept. of Corrections*, 75 F.3d 330, 331 (7th Cir.

1996) (Under *Heck*, "[t]he [determinative] issue . . . is not the relief sought, but the ground of the challenge."); *Cook v. Baker, et al.*, 139 F. App'x 167, 169 (11th Cir. 2005) (The "exclusive remedy" for a state inmate's claim challenging the basis for or validity of his incarceration "is to file a habeas corpus petition pursuant to 28 U.S.C. § 2254[.]").

Under the circumstances of this case, *Heck* and its progeny bar Tullis' use of any federal civil action, other than a petition for habeas corpus relief under 28 U.S.C. § 2254, to mount a collateral attack on the validity of her conviction and sentence.  512 U.S. at 489 ("We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action.  Even a prisoner who has fully exhausted [all] available state [and federal] remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."); *Abella v. Rubino*, 63 F.3d 1063, 1066 n.4 (11th Cir. 1995) ("*Heck* clarifies that *Preiser* is a rule of cognizability, not exhaustion.").  In light of the foregoing, the claims presented herein by Tullis regarding the constitutionality of her attempted murder conviction and the resulting sentence are not cognizable in this cause of action.[3]

---

[3]The court notes that Tullis raised the sufficiency of the evidence and illegal sentence claims, along with numerous other claims, in a 28 U.S.C. § 2254 petition for writ of habeas corpus filed in this court.  *See Tullis v. Barrett, et al.*, 2016 WL 8731786 (M.D. Ala. Mar. 11, 2016) and 2016 WL 3022705 (M.D. Ala. Apr. 4, 2016), adopted as opinion of the court 2016 WL 3010230 (M.D. Ala. May 25, 2016), certificate of appealability denied (11th Cir. Dec. 2, 2016), *cert. denied* --- U.S. ---, 137 S.Ct. 1821 (2017).  In such action, this court denied Tullis relief.  Thus, before filing a second or successive habeas petition in this court, Tullis must receive permission to do so from the Eleventh Circuit Court of Appeals.  Title 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); Title 28 U.S.C. § 2244(b)(3)(B) and (C) ("A motion in the court of appeals for an order authorizing the district court to consider a second or successive application

**IV.  CONCLUSION**

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before August 14, 2017 the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885

---

shall be determined by a three-judge panel of the court of appeals" and may be granted "only if [the assigned panel of judges] determines that the application makes a prima facie showing that the application satisfies the requirements of [28 U.S.C. § 2244(b)(2)]."

F.2d 790, 794 (11th Cir. 1989).

Done this 31st day of July, 2017.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE